E. Allen LOCKE, d/b/a Continental Longview Motor Inn, Appellant,

v.

The STATE of Texas, Appellee.

No. 8262.

Court of Civil Appeals of Texas, Texarkana.

Dec. 3, 1974.

Douglas Weitzel, Longview, Royal Caswell, Odessa, for appellant.

Ralph Prince, Crim. Dist. Atty., Gregg County, Alvin G. Khoury, Asst. Dist. Atty., Longview, for appellee.

CORNELIUS, Justice.

After due notice and hearing, the District Court of Gregg County issued a temporary injunction which enjoined appellant from commercially exhibiting or possessing for the purpose of commercially exhibiting, films portraying acts of sexual intercourse, deviate sexual intercourse, and bestiality as defined by Sections 21.01(1), 21.01(3) and 21.07(4), Vernon's Anno.Tex.Penal Code. The injunction was issued pursuant to Article 4667, Vernon's Anno.Tex.Civ.Stat. which provides that the habitual use of any premises for the commerical exhibition of obscene material shall constitute a nuisance and shall be enjoined at the suit of the state or any citizen thereof. Appellant contends that the injunction is invalid because (1) the exhibitions causing the issu-

ance of the injunction did not constitute "commercial exhibitions"; (2) the films exhibited by appellant did not constitute "osbcenity" and were therefore protected from suppression by the First Amendment to the United States Constitution; (3) the order amounts to an unconstitutional prior restraint on appellant's freedom of expression; (4) the injunction does not require the element of scienter in the exhibition of such films; and (5) the injunction constitutes an unconstitutional invasion of the right of privacy. The judgment of the trial court will be affirmed.

Section 43.21, Vernon's Anno.Tex.Penal Code defines "obscene" as follows:

" 'Obscene' means having as a whole a dominant theme that: appeals to a prurient interest in sex, nudity, or excretion; is patently offensive because it affronts contemporary community standards relating to the description or representation of sex, nudity, or excretion; and is utterly without redeeming social value."

"Prurient interest" is defined by that section as ". . . a shameful or morbid interest in nudity, sex, or excretion that goes substantially beyond customary limits of candor in descriptions or representations of such matters." Section 21.01 (3) defines "sexual intercourse" as any penetration of the female sex organ by the male sex organ and subsection (1) thereof defines "deviate sexual intercourse" as contact between any part of the genitals of one person and the mouth or anus of another person. Section 21.07(4) makes an offense of an act involving contact between a person's mouth or genitals and the anus or genitals of a fowl or animal.

The evidence supporting the injunction is set forth in detail in an agreed statement of facts. It reveals that appellant was the sole proprietor and operator of the Continental Longview Motor Inn. The motel consists of one hundred thirty rooms. On the dates the films were exhibited the room price for a single occupancy in the motel was $12.50 per day. Subsequently, the price was raised to $13.50 per day. All motel patrons are asked upon registering if they desire closed circuit T.V. movies. If the patron indicates a desire to see such movies he is required to sign an agreement which reads as follows:

"I request a room which offers FREE adult entertainment on closed circuit television. I realize that the entertainment provided on closed circuit television deals explicitly with all forms of human sexuality; and that I will personally make a decision to view or not to view such matter upon occupying my room. I am at least 18 years old and assume the responsibility to prevent anyone who is not at least 18 years old from entering my room. I agree to keep all passages to my room closed and locked and to keep all curtains and drapes closed while the closed circuit television is turned on. I understand that the CONTINENTAL LONGVIEW MOTOR INN and the management will cooperate fully with all law enforcement bodies to insure terms of this agreement."

The movies are available in ninety of the motel's one hundred thirty rooms. The television sets also receive three commercial T.V. stations in Shreveport, Louisiana, and one in Tyler, Texas. The unit price of all rooms in the motel is the same regardless of the availability of the closed circuit movies. The choice of the patron is voluntary as to such closed circuit television movies in his room, and if the patron desires to view such movies he must turn the set on. In response to certain complaints, an investigation of appellant's motel operation was undertaken by the Longview Police Department. On several occasions police officers rented rooms at the motel and viewed the movies which were available. Criminal complaints for exhibiting obscene material were lodged against appellant, but these charges remain undisposed of at this date. On July 16, 1974, the State filed its petition for injunction. No ex parte restraining order or writ was

issued. After notice, the trial court heard evidence, examined the exhibits, and viewed the films, and then issued a temporary injunction in a form agreed to by both appellant and the State.

Appellant's first attack upon the order contends that his exhibition of the films did not constitute "commercial exhibition", and that the injunction was therefore not authorized under the provisions of Article 4667, Vernon's Anno.Tex.Civ.Stat. To support his contention appellant emphasizes that no extra charge was made for the exhibition of the films, and urges that as stated in the "agreement" which is signed by patrons desiring such rooms, the availability of such films is merely a "free" service.

"Commercially exhibit" is not defined by our Penal Code, and we have found no case construing the term, but apparently it was intended by the legislature that "commercially" would mean "for valuable consideration". This is compatible with the meaning usually ascribed to the word, and is suggested by the definitions of "distribute" and "commercially distribute" which are found in the code. "Distribute" is defined as a transfer of possession *with or without consideration.* "Commercially distribute" is defined as the transfer of possession *for valuable consideration.* The question, then, is whether the exhibition of films to a patron in consideration of his renting a room is an exhibition "for valuable consideration" if no extra charge is made for the exhibition itself. We conclude that it is.

The operation of a motel for profit is a commercial venture in which rooms *and appurtenant facilities and services* are furnished to patrons for an agreed charge. Whatever is furnished or is made available to the patron in consideration of his having rented a room is not "free", but is furnished to him for a valuable consideration as part of a commercial transaction. See Lotspiech v. Continental Illinois National Bank & Trust Company of Chicago, 316 Ill.App. 482, 45 N.E.2d 530 (1st Dist., 3rd Div. 1942). If a patron must pay for one service or facility in order to be eligible to receive another service or facility, the latter is not a gratuity, but is furnished in consideration of the former. Regardless of how such an arrangement may be construed by the public and the advertising business, the services and facilities in such a case are not "free" in the legal sense. See Independent Journal Newspaper v. United Western Newspapers, Inc., 15 Cal. App.3rd 583, 93 Cal.Rptr. 299. Appellant places great reliance upon the fact that the same price was charged for rooms without the films as for those with the films, but that fact does not make the furnishing of such films free, any more than giving a patron other options such as the location and the nature of the facilities he desires makes the furnishing of those facilities free. The exhibition of the films by appellant in this case constituted "commercial exhibition" within the meaning of Article 4667, Vernon's Anno.Tex.Civ.Stat.

Appellant urges that the films he exhibited do not constitute obscenity, and that his exhibition of them is therefore protected by the First Amendment to the United States Constitution. It is settled that obscenity is not within First Amendment protection. Roth v. U. S., 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972). What constitutes obscenity, however, has not been easily settled. Our courts have repeatedly struggled with this question, and more often than not the result has been to increase rather than to reduce the confusion. Fortunately, after years of analysis and refinement, an authoritative definition of obscenity has been adopted which is considerably easier to apply than those tortured definitions previously announced. The United States Supreme Court now defines obscenity as works which depict or describe sexual conduct, specifically defined by written law or authoritative construction, which works taken as a whole appeal

to the prurient interest in sex, and which portray sexual conduct in a patently offensive way, and which taken as a whole do not have serious literary, artistic, political or scientific value. The test of "utterly without redeeming social value" has been discarded, and the standards for judging such works are now "contemporary community standards" rather than a "national standard". Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). See also Hamling v. U. S., 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) and Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). The Texas statutory definition, Sec. 43.21, Vernon's Anno.Tex.Penal Code, still requires the "utterly without redeeming social value" test, thus placing it in the unusual position of being more narrow than the definition now approved by the United States Supreme Court. West v. State, 514 S.W.2d 433 (Tex.Crim.App.1974).

■ In accordance with the requirement that an independent determination of the obscene nature of the material be made by the reviewing court, we have viewed the films introduced as exhibits below, and we find them to be obscene by any reasonable definition. The films have practically no plot or story content. They merely depict in the most explicit and detailed form possible, a continuing series of acts of sexual intercourse, deviate sexual intercourse, oral sodomy, cunnilingus, and fellatio. The camera repeatedly focuses on the genitalia of the participants in a lewd manner, and there is no literary, artistic, political or scientific value. Their appeal is wholly to the prurient interest in sexual conduct. They are obscene according to both the Texas statutory definition and the test approved by the United States Supreme Court in Miller v. California, supra.

■ We now consider whether the order of the trial court is an illegal prior restraint on the freedom of expression. The doctrine of prior restraint was originally formulated to protect our citizens against *systems of advance censorship*. Emerson, The Doctrine of Prior Restraint, 20 Law & Const.Prob. p. 648. Kingsley Books v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). The dangers inherent in such systems were readily apparent and justifiably feared. Eventually the doctrine came to be applied to other statutes and to judicial decrees as well as to censorship systems. Near v. Minnesota, 283 U.S. 697, 75 L.Ed. 1357, 51 S.Ct. 625 (1931); State v. I. A. Woman, 53 Wis.2d 102, 191 N.W.2d 897 (1971). Thus, even though obscenity is not within the protection of the First Amendment, the states are not free to adopt whatever procedures they please for the regulation of such matter. The procedures must contain adequate safeguards to prevent the suppression or curtailment of constitutionally protected expression, and they should not deny the right to a judicial determination of the nature of the material in question or place the burden upon the citizen to justify the protected status of the material. Bantam Books v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L. Ed.2d 649 (1965). Not every prior restraint is illegal. Times Film Corp. v. Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961). But procedures which are dificient in the respects mentioned are generally held to constitute illegal prior restraints. Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971); Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

■ In theory, a procedure such as allowed by Article 4667 and followed here is not an illegal prior restraint, but is rather one of subsequent punishment. Emerson, The Doctrine of Prior Restraint, supra. The measure of its constitutionality, however, is not its theoretical application, but its *operation and effect in actual practice*. Near v. Minnesota, supra; Kingsley Books v. Brown, supra. The order in question here restrains only the exhibition of films depicting specific activities con-

ducted in a certain manner. All these activities are expressly defined by statute and have been authoritatively construed to constitute obscenity not entitled to constitutional protection. Sections 21.01(1), 21.02(3), 21.07(4) and 43.21, Vernon's Anno.Tex.Penal Code; Miller v. California, supra. The order does not contain a blanket suppression of films vaguely labeled "obscene", and there is no suppression of films by name or any other designation except by reference to the specific conduct depicted therein. The difference between "hard core pornography" and "soft core" or R rated films is recognized and stipulated by appellant in the agreed form of the order when it is stated therein: " . . . respondent . . . shall not be restrained from showing what is ordinarily known as R type or soft core type films on such premises, . . . " The order then contains an *agreed procedure* which is designed to prevent constitutionally protected material from being suppressed, which procedure allows appellant to secure a judicial determination of the protected or nonprotected status of a film prior to its exhibition. Even if appellant desires to by-pass that procedure by proceeding to exhibit a film and then testing its character in a contempt hearing, the State will have the burden to prove that the exhibition comes within the narrow limits of the injunction. Under these circumstances there appears to be no danger that protected matter will be suppressed or that the appellant will have any doubt about the legality of his future conduct.

In view of the specific acts proved against appellant which gave rise to the issuance of the injunctive order, the specificity of the order, and the stipulations and agreed procedures contained in the order, there is no unconstitutional prior restraint in this case. Richards v. State, 497 S.W.2d 770 (Tex.Civ.App. Beaumont 1973); Kingsley Books v. Brown, supra.

Appellant next asserts that the order is void because it does not require the element of scienter or knowledge on his part. No point is raised in appellant's brief as to the sufficiency of the proof of scienter concerning the nature of the films *actually exhibited* by appellant prior to the issuance of the injunction, but mention was made of such a contention in oral argument. In that regard we find that the evidence and the stipulations in the record constitute sufficient proof of appellant's knowledge of the contents of those specific exhibitions. See Richards v. State, supra and cases there cited. As to the injunction order itself, it enjoins appellant [1] from the commercial exhibition or possession for the purpose of commercial exhibition of films showing the specific conduct which is defined in the order and in Sections 21.01(1), 21.01(3) and 21.07(4) of the Penal Code. The words "knowingly" or "with knowledge of the content thereof" do not appear in the order. For that reason, appellant contends that the requirement of scienter as applied by the United States Supreme Court in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) and other cases is not present.

Appellant's reliance upon Smith v. California, supra is misplaced. That case involved a *bookseller,* and announced the rule that a person having multitudes of material as his stock in trade cannot be assumed to have knowledge of the specific content of all of such material, and thus cannot be held reponsible for the *possession* of obscene matters among such material unless he knows of the obscene nature thereof. The logic of such a rule is obvious. The same logic does not apply to a motel operator who exhibits selected films to his patrons. It is difficult to believe that such a person would exhibit a film without having some knowledge of its contents.[2] Nevertheless, scienter is a re-

1. See Rule 683, Vernon's Anno.Tex.R.Civ.P.

2. Circumstances may warrant the inference that a person was aware of the contents of

the material, despite his denial. Smith v. California, supra.

quirement, and to remove any doubt as to its inclusion in the order in question, that order will be modified to add the words "with knowledge of the contents thereof" preceding the words "commercially exhibit" or "possess for the purposes of commercially exhibiting . . ." Rule 434, Vernon's Anno.Texas Rules of Civil Procedure.

Finally, appellant attacks the order on the ground that it constitutes an unconstitutional invasion of the right of privacy. The rationale of this contention is that the State has no right to regulate the type of expression that a citizen may possess or view in the privacy of his own home, and that a person's motel room is the equivalent of his home as far as Constitutional safeguards are concerned. It is true that the State cannot dictate what a citizen may view in the privacy of his own home. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Furthermore, it may be conceded for the purposes of this discussion that a motel room rented by a citizen is the equivalent of his home as to the usual constitutional protections, such as freedom from unreasonable searches and seizures. See Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L. Ed.2d 858 (1964). It does not follow, however, that these principles protect appellant in the commercial *exhibition* of films to his motel patrons. The injunction order in question here does not regulate or dictate what a room renter at the motel may *view* in the privacy of his own room. It rather regulates what appellant may *exhibit* to the patrons of the motel. See U. S. v. Thirty-Seven (37) Photographs, 402 U. S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). It is settled that the constitutional right of a citizen to view what material he pleases in the privacy of his own home does not give rise to a corollary right for others to *furnish* such material for his viewing. U. S. v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971); U. S. v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1972); U. S. v. Thirty-Seven (37) Photo-

graphs, supra. It is even held that the right of a person to privately possess obscene material does not create the corollary right for that person to import or transport the material for such use or purpose. U. S. v. 12 200-Ft. Reels of Super 8 mm. Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1972). As said in *Thirty-Seven (37) Photographs,* "whatever the scope of the right to receive obscenity adumbrated in *Stanley,* that right . . . does not extend to one who is seeking . . . to distribute obscene material to the public."

All of the appellant's points of error have been carefully considered and are respectfully overruled. The order of injunction issued by the trial court will be modified to add the words "with knowledge of the contents thereof" to the prohibitions contained therein against commercially exhibiting or possessing for the purpose of commercially exhibiting the material described therein. As modified, the order of the trial court is affirmed.