NORTH EAST INDEPENDENT SCHOOL DISTRICT et al., Appellants,

v.

NORTH EAST FEDERATION OF TEACHERS, LOCAL # 3410, AMERICAN FEDERATION OF TEACHERS, AFL–CIO, et al., Appellees.

No. 6535.

Court of Civil Appeals of Texas, El Paso.

July 14, 1976.

Foster, Lewis, Langley, Gardner & Banack, Inc., Ralph G. Langley, Emerson Banack, Jr., William T. Armstrong, III, San Antonio, for appellants.

Mary Patricia Robards, San Antonio, for appellees.

OPINION

OSBORN, Justice.

This is an appeal from the granting of a temporary injunction, now superseded, which enjoined the School District and certain administrators from refusing to allow the distribution to teachers within the School District of a circular concerning suspending disruptive students from class. We reverse the judgment of the trial Court, and the injunction is dissolved.

The only two witnesses to testify at the injunction hearing were Gerald C. Hastings, a teacher at Churchill High School and the president of the North East Federation of Teachers, and Ivan W. Fitzwater, Superintendent of Schools for the North East Independent School District. Mr. Hastings identified a letter he had written to a School Principal on March 17, 1975, requesting permission to distribute Union materials at Churchill High School in the hallways before and after class, and in the teachers' lounge and dining room during school hours. The Union agreed to submit a copy

of all materials to the Principal prior to distribution. The following day he received an authorization for distribution following the guidelines set forth in his letter. Thereafter, some eight or nine pamphlets and newsletters were distributed without difficulty. On October 7, 1975, Mr. Hastings wrote to the High School Principal requesting a time and place to distribute the flyer which appears as an exhibit to this Opinion. The next day he was denied permission to distribute the publication " * * on the Winston Churchill Campus."

On October 9, 1975, Mr. Hastings appeared before the School Board at a regular meeting and asked that they adopt a policy of free speech with no censorship of Union materials. He gave the Board a copy of the flyer which had been rejected for distribution on the School campus. The request was taken under advisement. He testified at the injunction hearing that the need for the flyer did not create any emergency.

Mr. Fitzwater testified that there was no request for Board action on this particular flyer. It was his opinion that the proposed method of distribution was such that the flyer could have fallen into the hands of students, and in such a case, it would have a disruptive effect on the operation of the School. Thus, he was of the opinion that it should not be distributed on the campus. He also noted that Mr. Hastings' policy request was not on the agenda, but that the request was made before the Board at a time provided for citizens' discussion.

One day after the Board took the policy request under advisement, this suit was filed and seven days later the hearing was held in District Court.

It seems worth noting that this School Board, which denied the right to distribute an "underground" newspaper and was castigated for such conduct in *Shanley v.*

*Northeast Independent School District, Bexar County, Texas,* 462 F.2d 960 (5th Cir. 1972), because of its failure to follow the rules in *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), now finds itself with a problem of disruptive students, the very thing Mr. Justice Black so ably warned about in his dissenting opinion in the *Tinker* case, namely " * * * the beginning of a new revolutionary era of permissiveness in this country fostered by the judiciary."

This time the teachers, who want to distribute material to complain about disruptive students, are unwilling to abide by the administrators' determination that their materials will cause the very thing the teachers dislike, i. e. disruptive students. School Boards and their administrators everywhere must be amazed by those decisions which regulate the use of armbands,[1] freedom buttons,[2] hairstyles,[3] and underground newspapers,[4] after a professed belief and assertion that "courts should not interfere with the day-to-day operations of schools."[5]

■ The Appellants complain in their first point of error that the granting of the temporary injunction did not have the effect of maintaining the status quo between the parties, but that instead it destroyed that relationship. Prior to the injunction, the Union had always submitted and obtained administration approval to distribute its materials. Mr. Hastings testified that the purpose of his letter of October 7th was to ask for permission to distribute the flyer. The Court's injunction permits distribution without administration approval, and thus changes the status quo.

Of even greater consequence is the fact that the Appellees at a temporary injunc-

1. See *Tinker v. Des Moines Independent Community School District*, supra.

2. *Burnside v. Byars*, 363 F.2d 744 (5th Cir. 1966).

3. *Karr v. Schmidt*, 320 F.Supp. 728 (W.D.Tex. 1970), reversed 460 F.2d 609 (5th Cir. 1972).

4. See *Shanley v. Northeast Independent School District*, supra.

5. Id. 967.

tion hearing obtained full relief and no issue remains for a final hearing. In *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549 (1953), the Court said:

"In a hearing on an application for a temporary injunction the only question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. *James v. Weinstein & Sons*, Tex.Com. App., 12 S.W.2d 959, 960. To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. * * * "

■ Thus, in this case the Appellees obtained full relief, the right to distribute the flyer, and did so under a requirement of only showing a probable right and a probable injury, without the necessity of proof that they will finally prevail in the litigation. But a final hearing would be moot once distribution occurs under the temporary injunction. It was never intended that a party obtain full relief at a temporary injunction hearing where the burden is substantially different from that at a final hearing on a permanent injunction. *Houston Belt & Terminal Railway Company v. Texas and New Orleans Railroad Company*, 155 Tex. 407, 289 S.W.2d 217 (1956). The first point is sustained.

■ We also sustain the second point of error because the trial Court erred in granting the injunction before Appellees had exhausted their administrative remedies and pursued to a final determination the administrative appeals available to them. *McIntyre v. Hoblinski*, 333 S.W.2d 697 (Tex.Civ. App.—Waco 1960, writ ref'd); *Ector County Independent School District v. Hopkins*, 518 S.W.2d 576 (Tex.Civ.App.—El Paso 1974, no writ). Having elected to submit the issue to the School Board for its decision, that appeal must be exhausted and completed before one resorts to the courts for any additional relief. *Cook v. Neill*, 163

Tex. 49, 352 S.W.2d 258 (1961). The fact that the Board did not act on the same day the request was made does not mean the appeal had been completed. In fact, since the request for a new policy was not on the agenda for the School Board meeting, there would be a serious question as to the validity of any action taken by the Board on a non-emergency matter under the Open Meetings Law. See Article 6252–17, Sec. 3A, Tex.Rev.Civ.Stat.Ann.; *Toyah Independent School District v. Pecos-Barstow Independent School District*, 466 S.W.2d 377 (Tex.Civ.App.—San Antonio 1971, no writ); *Lower Colorado River Authority v. City of San Marcos*, 523 S.W.2d 641 (Tex.1975). Once the request was made for a new policy, it would seem the Board took the only alternative open to it, which would require taking the matter under advisement, then placing it on an agenda for action at a regular Board meeting and then adopting such policy as was proper and necessary with due regard for the rights of all concerned.

In the meantime, there has been no censorship of the Union flyer or newsletters. Mr. Hastings readily admitted Union publications could be mailed to teachers in the School system, or they could be hand delivered outside the School campus. While this might be more expensive and more time consuming, nevertheless, a means of distribution was available to the Union. Once a policy is adopted, it may be subject to attack, but if it be such as to prevent "material and substantial" disruption of school activities, then it would be a permissible restraint upon the constitutional right of free speech. *Shanley v. Northeast Independent School District*, supra.

The School Board, having been directed to provide a "reasonable appellate mechanism" in *Shanley*, and having been enjoined from permitting that appellate mechanism to work in this case, must wonder what direction it should take as the control of its day-to-day operations does a flip-flop between federal and state courts. No censorship having occurred, we propose to leave

those operations with the trained and educated school administrators and the duly elected board members, who are always accountable to the public whom they serve without pay, life tenure or retirement benefits.

Having sustained Appellants' Points of Error One and Two, the third point becomes immaterial.

The judgment of the trial Court is reversed and the temporary injunction is dissolved.

The Federation of Teachers will take the problem of classroom control to the North East school board this Thursday at 4:15 p.m. The Federation will request that teachers be allowed to suspend disruptive students from class until the student agrees to abide by predetermined behavior standards.