UNIVERSAL AMUSEMENT CO., INC., et al.,

v.

Carol VANCE et al.

KING ARTS THEATRE, INC., Plaintiff-Appellee,

v.

George E. McCREA et al., Defendants,

the State of Texas, Defendant-Appellant.

No. 75–4312.

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1978.

Max P. Flusche, Jr., Asst. Atty. Gen., John L. Hill, Atty. Gen., David M. Kendall, 1st Asst. Atty. Gen., Joe B. Dibrell, Lonny F. Zwiener, Asst. Attys. Gen., Austin, Tex., for State of Texas.

Douglas C. Young, Keith W. Burris, Asst. Crim. Dist. Atty., San Antonio, Tex., for Butler.

Edgar Pfeil, Asst. City Atty., Jane Haun Macon, City Atty., San Antonio, Tex., for Peters.

Steven Arronge, San Antonio, Tex., for appellant.

Frierson M. Graves, Jr., Memphis, Tenn., Gerald Goldstein, San Antonio, Tex., for R. C. Dexter & Southland.

Before BROWN, Chief Judge, THORN-BERRY, COLEMAN, GOLDBERG, AINS-WORTH, GODBOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judges.*

\* Judge Morgan was a member of the en banc court under 28 U.S.C.A. § 46(c) and participated in the oral argument of the case en banc. Subsequently, the Omnibus Judgeship Bill, Public Law 95–486 (95th Congress), 92 Stat. 1629 was approved October 20, 1978. In view

THORNBERRY, Circuit Judge:

This Texas obscenity case has had a long and somewhat unusual history. Originally filed on November 12, 1973, in the Northern District of Texas under the caption *King Arts Theatre, Inc. v. McCrea*, it was subsequently consolidated by the Chief Judge of this Court with other obscenity cases pending before a three-judge court sitting in the Southern District of Texas. That court had initially been constituted to hear a single case, *Universal Amusement Co. v. Vance*, the caption of which graces this opinion.

The consolidated cases eventually mushroomed to twenty, and the three-judge court selected for trial three representative cases: *King Arts Theatre, Inc. v. McCrea*, *Dexter v. Butler*, and *Ellwest Stereo Theatre, Inc. v. Byrd*. The district court's opinion is reported under the caption *Universal Amusement Co. v. Vance*, 404 F.Supp. 33 (S.D.Tex.1975). A panel of this Court affirmed the district court's decision in *Dexter* but reversed its ruling in *King Arts Universal Amusement Co. v. Vance*, 559 F.2d 1286 (5 Cir. 1977). The *Ellwest Stereo* case was not appealed.

This court ordered the two cases reheard *en banc* and subsequently severed and renumbered them, although both will continue to carry the *Universal Amusement* caption. This opinion thus treats only the appeal in *King Arts*, No. 75–4312,[1] and for the reasons stated below, we reverse the panel and affirm the judgment of the district court.

The facts can be briefly summarized. In 1973, King Arts Theatre, Inc. was operating an indoor, adults-only motion picture theatre in San Angelo, Texas, that showed sexually explicit films. On October 30 of that year, the landlord from whom the theater building was rented gave notice to King Arts that its lease was to be terminated as of November 15. According to the notice,

of this, Judge Morgan does not participate in this decision.

1. The *Dexter* case was renumbered as 75–4313, and the decision of the *en banc* Court is reported at 587 F.2d 176 (5 Cir. 1978).

County Attorney George E. McCrea had informed the landlord that he intended to obtain an injunction to abate the theater as a public nuisance in order to prohibit the future showing of allegedly obscene motion pictures.

King Arts filed suit on November 12 in the Northern District of Texas seeking injunctive and declaratory relief from any action by the county attorney under the Texas nuisance statutes.[2] The case was then transferred to the three-judge court, and the parties agreed to maintain the status quo until the case could be decided. The district court found that the landlord was terminating King Arts' lease "at the suggestion" of the county attorney, and that he intended to seek an injunction based on the nuisance statutes and to pursue cancellation of the lease.[3]

The district court concluded that *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), did not preclude granting the requested relief since no prosecution—either civil or criminal—was pending. It also found that a proceeding under the nuisance statutes would not cause irreparable injury and, accordingly, declined to grant injunctive relief. Reaching the merits of King Arts' claims, the court held that Texas courts would construe the phrase

"obscene material" in the applicable Texas nuisance statute as the phrase was defined in the state's penal code and upheld that definition against a claim of unconstitutional vagueness. However, the court held that the Texas nuisance statutes, construed together, constituted an unconstitutional prior restraint on the distribution of materials not yet judicially determined to be obscene. In addition, the court expressed serious doubts about the validity of the Texas injunction procedures as applied in the obscenity context.

The state of Texas[4] appealed from the district court's judgment that the nuisance statutes were unconstitutional. King Arts did not appeal from the court's denial of injunctive relief or its upholding of the state's obscenity definition. Because this is an appeal from the grant of declaratory relief alone, the Supreme Court is without jurisdiction to hear a direct appeal under 28 U.S.C. § 1253, and the appeal is properly before this Court. *Gerstein v. Coe*, 417 U.S. 279, 94 S.Ct. 2246, 41 L.Ed.2d 68 (1974); *Beal v. Doe*, 432 U.S. 438, 443, 97 S.Ct. 2366, 53 L.Ed.2d 464 n.5 (1977).[5]

I.

The only issue on appeal[6] is the constitutionality of the Texas nuisance stat-

2. Jurisdiction was based on 28 U.S.C. § 1343, the jurisdictional counterpart to 42 U.S.C. § 1983, as well as on 28 U.S.C. § 2201 (declaratory judgments).

3. As the panel opinion pointed out, nothing in the landlord's notice letter to King Arts indicates that the lease termination was at the suggestion of McCrea; rather, the letter stated that the termination was to avoid the embarrassment and inconvenience of joinder as a defendant in a suit to enjoin the showing of pornographic films. 559 F.2d at 1289 n.2. However, the district court's opinion states that the facts recited therein were "agreed to by the parties," 404 F.Supp. at 38, and neither party challenges the district court's factual findings on appeal.

4. In addition to County Attorney McCrea, the suit named as defendants Texas Governor Dolph Briscoe and Attorney General John Hill.

5. Under § 1253, any party may directly appeal to the Supreme Court from an order granting or denying an injunction in any civil action

required to be heard by a three-judge court. Former § 2281, now repealed, provided that any injunction restraining the enforcement of a state statute or restraining a state official from enforcing such statute "shall not be granted . . . upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges." Because this action had been commenced before the effective date of the repealing legislation, § 2281 applied to this suit. Pub.L. 94–381, § 7; 94th Cong., 2d Sess. (1976) U.S.Code Cong. & Admin.News 1976, p. 1988.

6. Appellant did not raise the question of *Younger* abstention, and that issue, being nonjurisdictional, is thus not before this court. We note that in the instant case, there were no state proceedings pending when the suit was brought. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

utes as applied to obscenity, although this question requires three separate but related inquiries. At the outset, we stress that while obscenity is not within the purview of the first amendment, *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), state regulation must not be permitted to impinge upon "speech that matters." Justice Brennan eloquently expressed this important concept in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963):

> [T]he Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line. It is characteristic of the freedoms of expression in general that they are vulnerable to gravely damaging yet barely visible encroachments. Our insistence that regulations of obscenity scrupulously embody the most rigorous procedural safeguards is therefore but a special instance of the larger principle that the freedoms of expression must be ringed about with adequate bulwarks.

"[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated . . . is finely drawn. . . . The separation of legitimate from illegitimate speech calls for . . . sensitive tools."

*Id.* at 66, 83 S.Ct. at 637 [citations and internal quotations omitted].[7]

■ Our initial concern is whether the Texas statutory scheme operates as an unconstitutional prior restraint by allowing the state to close, for one year, an establishment that has exhibited obscene films or sold obscene printed matter. Although the instant case involves motion pictures, our analysis is equally applicable to printed material.

Article 4666 of the Texas Revised Civil Statutes[8] provides for suits in the name of the state to enjoin a nuisance. If an establishment is deemed a nuisance, there exists the rather Draconian remedy of closing the establishment "for one year from the date of said judgment," unless the operator posts a penal bond ranging from $1,000 to $5,000 against future violations of the nuisance laws. Article 4664[9] defines three types of

---

**7.** We also note other principles common to our three inquiries in this case. Corporate activities can clearly come within the first amendment, *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), and entertainment, as well as news, enjoys first amendment protection. *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). Motion pictures are covered by the first amendment, *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952), and precision of regulation must be the touchstone. *Interstate Circuit, Inc. v. Dallas*, 390 U.S. 676, 682, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968). A film carries with it a presumption of first amendment protection, *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), and the courts "must always remain sensitive to any infringement on genuinely serious literary, artistic, political, or scientific expression." *Miller v. California*, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973).

**8.** Tex.Rev.Civ.Stat.Ann. art. 4666 provides:
Whenever the Attorney General, or the district or county attorney has reliable information that such a nuisance exists, either of them shall file suit in the name of this State in the county where the nuisance is alleged to

exist against whoever maintains such nuisance to abate and enjoin the same. If judgment be in favor of the State, then judgment shall be rendered abating said nuisance and enjoining the defendants from maintaining the same, and ordering that said house be closed for one year from the date of said judgment, unless the defendants in said suit, or the owner, tenant or lessee of said property make bond payable to the State at the county seat of the county where such nuisance is alleged to exist, in the penal sum of not less than one thousand nor more than five thousand dollars, with sufficient sureties to be approved by the judge trying the case, conditioned that the acts prohibited in this law shall not be done or permitted to be done in said house. On violation of any condition of such bond, the whole sum may be recovered as a penalty in the name and for the State in the county where such conditions are violated, all such suits to be brought by the district or county attorney of such county.

**9.** Tex.Rev.Civ.Stat.Ann. art. 4664 provides:
Any hotel, rooming house or boarding house, country club, garage, rent car stand or other place to which the public commonly resort for board or lodging or commonly con-

establishments as "common nuisances," and the proprietor of such an establishment is guilty of "maintaining a nuisance": gambling houses, houses of prostitution, and places where intoxicating liquors are illegally kept, manufactured, sold, or given away.[10]

Article 4667[11] defines the commercial manufacture, distribution, or exhibition of obscene material as a "public nuisance" and also sets forth a list of other nuisances, including gambling, prostitution, and bull fighting. The statute further provides that such activities "shall be enjoined at the suit of either the State or any citizen thereof."

The Texas courts have not examined the relationship between Articles 4666 and 4667. *Compare State ex rel. Ewing v. "Without a Stitch,"* 37 Ohio St.2d 95, 307 N.E.2d 911, 917–18 (1974), *app. dism'd,* 421 U.S. 923, 95 S.Ct. 1649, 44 L.Ed.2d 82 (1975) (interpreting one-year closing provision of state nuisance statute). The plain language of the statutes suggests that obscenity, which is defined as a nuisance under Art.

4667, is thus subject to the one-year closing provisions of Art. 4666. So read, the statutes would be patently unconstitutional insofar as they pertain to obscenity.

A prior restraint of expression comes before this court with "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan, supra* 372 U.S. at 70, 83 S.Ct. at p. 639; *New York Times Co. v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Read together, Articles 4666 and 4667 clearly create a prior restraint. The statutes allow the state to close, for one year, a theatre that has exhibited obscene films. Unless a bond from $1,000 to $5,000 is posted, the showing of *any* motion picture is punishable by contempt of court. Thus, future conduct that may fall within the purview of the first amendment is absolutely prohibited after a finding of unprotected present conduct. It was precisely this practice that was condemned by the Supreme Court in the landmark case of *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed.

gregate for business or pleasure, where intoxicating liquors are kept, possessed, sold, manufactured, bartered or given away, or where intoxicating liquors are furnished to *minors or to students of any educational institution,* or where persons habitually resort for the purpose of prostitution or to gamble as prohibited by the Penal Code, is hereby declared to be a common nuisance. Any person who knowingly maintains such a place is guilty of maintaining a nuisance.

10. The liquor provision has been construed as referring to places where liquor law violations occur. *See State v. Parker,* 147 Tex. 57, 212 S.W.2d 132 (1948).

11. Tex.Rev.Stat.Ann. art. 4667 provides:
(a) The habitual use, actual, threatened or contemplated, of any premises, place or building or part thereof, for any of the following uses shall constitute a public nuisance and shall be enjoined at the suit of either the State or any citizen thereof:
(1) For gambling, gambling promotion, or communicating gambling information prohibited by law;
(2) For the promotion or aggravated promotion of prostitution, or compelling prostitution;
(3) For the commercial manufacturing, commercial distribution, or commercial exhibition of obscene material;

(4) For the commercial exhibition of live dances or exhibition which depicts real or simulated sexual intercourse or deviate sexual intercourse;
(5) For the voluntary engaging in a fight between a man and a bull for money or other thing of value, or for any championship, or upon result of which any money or anything of value is bet or wagered, or to see which any admission fee is charged either directly or indirectly, as prohibited by law.
(b) Any person who may use or be about to use, or who may be a party to the use of any such premises for any purpose mentioned in this Article may be made a party defendant in such suit. The Attorney General or any District or County Attorney or City Attorney may bring and prosecute all suits that either may deem necessary to enjoin such uses, and need not verify the petition; or any citizen of this State may sue in his own name and shall not be required to show that he is personally injured by the acts complained of.
Prior to its amendment in 1973, Article 4667 did not denominate its various injunction-worthy activities as nuisances. The 1973 amendment, which brought commercial obscenity within the statute, also added the term "nuisance."

1357 (1931). Moreover, although a theater operator may post the bond and show films, he forfeits that bond if one of the films he has selected is deemed obscene. This statutory scheme obviously encourages a theater operator to steer wide of the danger zone by avoiding borderline films that are nonetheless protected under the first amendment. The line between obscenity and protected speech is "dim and uncertain," *Bantam Books, Inc. v. Sullivan, supra* 372 U.S. at 66,[12] 83 S.Ct. 631, and difficulty in locating that line leads to self-censorship, a particularly subtle and most insidious form of the malady. *Cf. New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (defamation).

▮ Application of the one-year closing provisions in obscenity cases under the Texas nuisance statutes would constitute an impermissible prior restraint, since the state would be "enjoin[ing] the future operation of a [business] which disseminates presumptively First Amendment protected materials solely on the basis of the nature of the materials which were sold . . . in the past." *Speight v. Slaton,* 356 F.Supp. 1101,

1107 (N.D.Ga.1973) (Morgan, J., dissenting), *vacated and remanded,* 415 U.S. 333, 94 S.Ct. 1098, 39 L.Ed.2d 367 (1974). Many courts have so held.[13]

▮ However, the federal courts should refrain from passing upon a constitutional question if there is an alternative ground such as statutory construction upon which the case may be decided. *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Pugh v. Rainwater,* 572 F.2d 1053, 1058 (5 Cir. 1978) (en banc). Accordingly, we hold that the one-year closing remedy provided in Article 4666 is inapplicable to obscenity and that the injunctive remedy provided in Article 4667 is the exclusive procedure for abating obscene exhibitions as nuisances. Thus, the one-year abatement procedure can be applied in cases of gambling, prostitution, and liquor law violations, all of which are defined as nuisances in Article 4664, but not in cases of obscenity, bull fighting, and live sex shows, which are covered only by Article 4667. This reading of the statutes, while somewhat strained,[14] is not implausible, given

12. As Justice Brennan has observed:
 The essence of our problem in the obscenity area is that we have been unable to provide "sensitive tools" to separate obscenity from other sexually oriented but constitutionally protected speech, so that efforts to suppress the former do not spill over into suppression of the latter.
 *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 79–80, 93 S.Ct. 2628, 2645, 37 L.Ed.2d 446 (1973) (Brennan, J., dissenting). *See also Ginzburg v. United States,* 383 U.S. 463, 480–81, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) (Black, J., dissenting).

13. *E. g., Sanders v. State,* 231 Ga. 608, 203 S.E.2d 153 (1974); *Gulf States Theatres of Louisiana, Inc. v. Richardson,* 287 So.2d 480 (La. 1974); *General Corp. v. State ex rel. Sweeton,* 294 Ala. 657, 320 So.2d 668 (1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976); *Mitchem v. State ex rel. Schaub,* 250 So.2d 883 (Fla.1971); *People ex rel. Busch v. Projection Room Theatre,* 17 Cal.3d 42, 130 Cal.Rptr. 328, 550 P.2d 600, *cert. denied,* 429 U.S. 922, 97 S.Ct. 320, 50 L.Ed.2d 289 (1976); *New Riviera Arts Theatre v. State ex rel. Davis,* 219 Tenn. 652, 412 S.W.2d 890 (1967); *State ex rel. Blee v. Mohney Enterprises,* 154 Ind.App. 244, 289 N.E.2d 519 (1973); *State ex rel. Field v. Hess,* 540 P.2d 1165 (Okl.1975); *State v. A*

*Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P.2d 760 (1976); *State ex rel. Ewing v. "Without a Stitch," supra; Spokane Arcades v. Ray,* 449 F.Supp. 1145 (E.D.Wash.1978). *See generally* Edelstein & Mott, *Collateral Problems in Obscenity Regulation: A Uniform Approach to Prior Restraints, Community Standards, and Judgment Preclusion,* 7 Seton Hall L.Rev. 543 (1976); Hogue, *Regulating Obscenity Through the Power to Define and Abate Nuisances,* 14 Wake Forest L.Rev. 1 (1978); Rendleman, *Civilizing Pornography: The Case for an Exclusive Obscenity Nuisance Statute,* 44 U.Chi.L.Rev. 509 (1977).

14. We could, for example, speculate that the legislature treated obscenity only in Article 4667 because it recognized the first amendment implications of a one-year closing under Article 4666. However, if that is so, it is rather odd that the legislature chose to include live sex shows and bull fighting in the same statute as obscenity, since those two activities implicate the first amendment only in the barest fashion. *Cf. California v. LaRue,* 409 U.S. 109, 118, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). We note that our efforts at statutory interpretation are handicapped by the lack of a legislative history of the nuisance statutes.

the fact that Articles 4664–66 were enacted in one bill, prior to enactment of Article 4667, and that Article 4667 did not contain the term "nuisance" until its amendment in 1973. *See* 559 F.2d at 1291 (panel opinion).

## II.

King Arts also urges that the injunction permitted by Article 4667(a)(3) is constitutionally deficient because the state can obtain an injunction that prohibits the future showing of various unnamed "obscene" films. The district court hinted its agreement but did not discuss the matter at length in view of its disposition of the case. The panel, however, determined that the injunctive procedure was "basically sound." 559 F.2d at 1292.[15]

Wholly apart from first amendment considerations, such a broadly drawn injunction would be invalid under the Texas Rules of Civil Procedure, which require that the injunctive order "be specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained . . . ." Rule 683, Tex.R.Civ.P. As the Texas Supreme Court explained in *Villalabos v. Holquin,* 146 Tex. 474, 208 S.W.2d 871, 875 (1948):

> [A]n injunction decree must be as definite, clear and precise as possible, and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing.

*See also Ex parte Slavin,* 412 S.W.2d 43 (Tex.1967).

For example, in *Moore v. State,* 470 S.W.2d 391 (Tex.Civ.App.—San Antonio 1971, writ ref. n. r. e.), the trial court had granted a temporary injunction prohibiting the sale of certain specific magazines and books, as well as the sale of "similar" material. In holding the "similar material" portion of the injunction invalid under Rule 683, the court said:

> [The order] does not sufficiently appraise [sic] appellants of the acts they are restrained from doing. In effect, the court is passing upon the obscenity of books, magazines, newspapers and films not before it, and perhaps not now in existence; and it prohibits generally the defendants from violating a penal statute without clear, precise or definite guidelines.

470 S.W.2d at 396. Moreover, in *Richards v. State,* 497 S.W.2d 770 (Tex.Civ.App.—Beaumont 1973, no writ), the court was faced with an injunction prohibiting, *inter alia,* the exhibition and distribution of obscene material in violation of the Texas Penal Code. Relying on *Moore,* the court held this portion of the injunction invalid under Rule 683: "This facet of the decree does not even comport with our basic rules of civil procedure, much less the almost insurmountable obstacle of the First Amendment." 497 S.W.2d at 778.

However, the *Richards* decision indicates that the Texas courts are willing to uphold more specifically framed injunctions against unnamed future films or publications. Another portion of the injunction in *Richards* prohibited the defendants from "exhibiting or selling any other films which show actual acts of fellatio . . ., cunnilingus . . ., actual oral genital contact between two or more males or females, any sexual intercourse between any human and any animal or any scenes depicting actual sexual intercourse between human males and females." The court, while recognizing the first amendment problems, upheld this part of the injunction as being "specific, definite, and clear." 497 S.W.2d at 780.[16]

---

**15.** King Arts did not cross-appeal in this case, but it need not have done so in order to urge alternative theories in support of the district court's judgment that Article 4667(a)(3) is unconstitutional. *United States v. American Ry. Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924); *Lowe v. Pate Stevedoring Co.,* 558 F.2d 769, 770–71 n.2 (5 Cir. 1977).

**16.** The court modified the decree to incorporate the holding of *Miller v. California, supra:*
> The injunction granted by this paragraph of the order is limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have any serious literary, artistic, political, or scientific value."

497 S.W.2d at 782.

Similarly, in *Locke v. State,* 516 S.W.2d 949 (Tex.Civ.App.—Texarkana 1974, no writ), the trial court had issued a temporary injunction enjoining appellant from commercially exhibiting films portraying acts of sexual intercourse, deviate sexual intercourse, and bestiality as defined by Texas Penal Code §§ 21.01, 21.07. The court upheld the injunction, concluding that it was not impermissibly vague and was not a prior restraint. The court said:

> The order in question here restrains only the exhibition of films depicting specific activities conducted in a certain manner. All these activities are expressly defined by statute and have been authoritatively construed to constitute obscenity not entitled to constitutional protection. The order does not contain a blanket suppression of films vaguely labeled "obscene," and there is no suppression of films by name or any other designation except by reference to the specific conduct depicted therein.

516 S.W.2d at 954–55 [citations omitted].[17]

It thus appears that Rule 683, as interpreted by the Texas courts, would allow the issuance of an injunction against the future exhibition of unnamed films that depict particular acts enumerated in the state's obscenity statute.[18] That is, while an injunction cannot simply forbid the showing of "obscene films," it can prohibit the showing of films that fall within the statutory definition of obscenity, so long as the prohibited acts are spelled out in the injunction. If this is the case—and the *Richards* and *Locke* decisions apparently represent the current state of the law—then we must examine such an injunction in light of the first amendment.

 Injunctions that abridge conduct protected by the first amendment are constitutionally impermissible. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); *United Transp. Union v. State Bar,* 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971). Although obscenity is not protected speech, "[t]he line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975). Accordingly, the Supreme Court has recognized the validity of injunctions against obscenity only when various safeguards are employed. For example, in *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 445, 77 S.Ct. 1325, 1330, 1 L.Ed.2d 1469 (1957), the Court upheld a New York statute, which, as authoritatively construed, "studiously withholds restraint upon matters not already published

---

**17.** The court also stressed the existence in the order of an agreed procedure by which appellant could secure a judicial determination of a film's status prior to its exhibition. This procedure, the court said, "is designed to prevent constitutionally protected material from being suppressed." 516 S.W.2d at 955.

**18.** Tex. Penal Code § 43.21 (Supp.1978) provides, in pertinent part:

 (1) "Obscene" means having as a whole a dominant theme that:
 (A) appeals to the prurient interest of the average person applying contemporary community standards;
 (B) depicts or describes sexual conduct in a patently offensive way; and
 (C) lacks serious literary, artistic, political, or scientific value.

 \* \* \* \* \* \*

 (3) "Prurient interest" means an interest in sexual conduct that goes substantially

beyond customary limits of candor in description or representation of such conduct. If it appears from the character of the material or the circumstances of its dissemination that the subject matter is designed for a specially susceptible audience, the appeal of the subject matter shall be judged with reference to such audience.

 \* \* \* \* \* \*

 (6) "Sexual conduct" means:
 (A) any contact between any part of the genitals of one person and the mouth or anus of another person;
 (B) any contact between the female sex organ and the male sex organ;
 (C) any contact between a person's mouth or genitals and the anus or genitals of an animal or fowl; or
 (D) patently offensive representations of masturbation or excretory functions.

and not yet found to be offensive." Similarly, in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 55, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446 (1973), the Court emphasized that a Georgia statute imposed no restraint on the exhibition of films "until after a full adversary proceeding and a final judicial determination by the Georgia Supreme Court that the materials were constitutionally unprotected." No such safeguards exist under Texas law. *See, e. g., Richards v. State, supra.*[19]

An order banning the exhibition of unnamed "obscene" films would prohibit the showing of films that have not been judicially declared obscene, as well as films that may not have even been produced. Such a blanket ban is not rendered unobjectionable by the interweaving of threats of language from obscenity statutes, for the end result is a sweeping prohibition against the screening of obscene films in general. Incorporation of the statutory definition of obscenity—usually a listing of forbidden sexual acts or acrobatics—merely begs the question, for few of us have the omniscience to determine, in advance of a final judicial ruling, whether a film is legally obscene. Moreover, it is possible that a film containing many of the acts listed in the statute may eventually be held *not* to be obscene, since the work must be taken as a whole, *Miller v. California, supra,* and since state law cannot define the "contemporary community standards" that must be applied by the fact finder. *Smith v. United States,* 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977). An injunction that forbids the showing of any film portraying the particular acts enumerated in the obscenity statute suppresses future films because past films have been deemed offensive. As Chief Justice Hughes wrote in *Near v. Minnesota, supra* 283 U.S. at 713, 51 S.Ct. at 630, "[t]his is of the essence of censorship."

We therefore hold that Article 4667(a)(3) is unconstitutional insofar as it authorizes injunctions against the future exhibition of unnamed films. Such a broad injunction simply cannot stand, for it amounts to a prior restraint on materials not yet declared obscene. *Parish of Jefferson v. Bayou Landing, Ltd.,* 350 So.2d 158 (La.1977); *News Mart, Inc. v. State ex rel. Webster,* 561 S.W.2d 752 (Tenn.1978); *Ranck v. Bonal Enterprises, Inc.,* 467 Pa. 569, 359 A.2d 748 (Pa.1976); *Fehlhaber v. North Carolina,* 445 F.Supp. 130 (E.D.N.C. 1978); *Mitchem v. State ex rel. Schaub, supra; State ex rel. Field v. Hess, supra; New Riviera Arts Theatre v. State ex rel. Davis, supra; Busch v. Projection Room Theatre, supra.*

### III.

King Arts also contends that Article 4667(a)(3) lacks the procedural safeguards required under *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).[20] Those safeguards were recently affirmed in *Southeastern Promotions, Ltd. v. Conrad, supra,* in which the Court summarized them as follows:

> *First,* the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. *Second,* any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. *Third,* a prompt final judicial determination must be assured.

420 U.S. at 560, 95 S.Ct. at 1247 [italics in original]. *See also United States v. Thirty-Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 44 (1971); *Blount v. Rizzi,* 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971); *Teitel Film Corp. v. Cusack,* 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1971).

**19.** Although some safeguards may apparently be written into an injunction, *see Locke v. State, supra* at 955 (discussed at footnote 17, *supra*), there is no *requirement* that they be included.

**20.** The district court expressed serious doubts about the validity of the Texas injunction procedure in the obscenity context but did not make a specific ruling in light of its disposition of the case. 404 F.Supp. at 45–46. The panel, however, upheld the procedures as constitutional. 559 F.2d at 1292–93.

Although *Freedman* arose in the context of obscenity determinations made by administrative bodies such as licensing boards or film commissions, its principles clearly extend to state statutes and rules governing injunctions against obscenity. *McKinney v. Alabama*, 424 U.S. 669, 96 S.Ct. 1189, 47 L.Ed.2d 387 (1976); *Paris Adult Theatre I v. Slaton, supra; Grove Press, Inc. v. Philadelphia*, 418 F.2d 82 (3 Cir. 1969); *United Artists Corp. v. Wright*, 368 F.Supp. 1034 (M.D.Ala.1974) (Three-judge court); *Gundlach v. Rauhauser*, 304 F.Supp. 962 (M.D.Pa.1969) (three-judge court).

Under the Texas injunction procedure, the trial court has broad discretion to grant or deny a temporary injunction, the purpose of which is to preserve the status quo of the suit's subject matter pending a final trial of the case on its merits. Accordingly, the trial court's decision is not a ruling on the merits of the case, but rather a determination of whether the applicant has shown a "probable right" and a "probable injury." In carrying this burden, the applicant is not required to establish that he will finally prevail in the litigation. The judgment of the trial court will be upheld unless the appellate court is convinced there was a clear abuse of discretion, and there is no such abuse if the evidence "tends" to sustain the cause of action as alleged. *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526 (Tex.1975); *Oil Field Haulers Ass'n v. Railroad Comm'n*, 381 S.W.2d 183 (Tex.1964); *Janus Films, Inc. v. City of Fort Worth*, 163 Tex. 616, 358 S.W.2d 589 (1962); *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549 (1953); *Texas Foundries, Inc. v. Foundry Workers*, 151 Tex. 239, 248 S.W.2d 460 (1952); *Southwestern Greyhound Lines v. Railroad Comm'n*, 128 Tex. 560, 99 S.W.2d 263 (Tex. 1936); *Hickman v. Board of Regents*, 552 S.W.2d 616 (Tex.Civ.App.—Austin 1977, writ ref'd).[21]

It is also clear that a party is not to receive full relief at a hearing for a temporary injunction, since the burden at that stage—"probable right" and "probable injury"—is substantially different from that at a final hearing on the merits. *Houston Belt & Terminal Ry. Co. v. Texas & N.O. R.R. Co.*, 155 Tex. 407, 289 S.W.2d 217 (1956); *North East I.S.D. v. North East Federation of Teachers*, 541 S.W.2d 191 (Tex.Civ.App.—El Paso 1976, no writ).

Pursuant to Rules 680–693a of the Texas Rules of Civil Procedure, the state can obtain, ex parte, a 10-day temporary restraining order against the showing of an allegedly obscene film. As soon as possible within the 10-day period, a hearing on a temporary injunction is obtainable. As the cases cited above make clear, this hearing is not a final adjudication on the merits, and, accordingly, the issuance of a temporary injunction is not a final judicial determination of obscenity. Rather, the granting of such an injunction represents the trial court's determination that the applicant has shown a "probable right" and a "probable injury" and has presented evidence that "tends" to sustain his cause of action. On appeal from the temporary injunction, the theater operator who has been enjoined cannot argue that the suppressed film is not obscene. Rather, "[t]he action under appellate review . . . is the exercise by the trial court of the discretionary power [to issue the injunction] pending trial, thereby maintaining the status quo." *State v. Southwestern Bell Tel. Co., supra* at 528.[22]

---

**21.** By way of comparison, this court has held that a federal district court, in order to grant a preliminary injunction, must find that the moving party has satisfied four prerequisites: (1) substantial likelihood of success on the merits; (2) a showing of irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. The movant has the heavy burden of persuading the district court that all four elements are satisfied, and this court will overturn the district court's decision only for abuse of discretion. *E. g., Hardin v. Houston Chronicle Pub. Co.*, 572 F.2d 1106 (5 Cir. 1978); *Canal Authority v. Callaway*, 489 F.2d 567 (5 Cir. 1974).

**22.** We note that the Texas procedure does not provide a mechanism for the issuance of a "preservation order" enjoining a theater from

Under the Texas procedure, the obscenity case is treated no differently than any other civil case. Thus, if the theater operator is unable to convince an appellate court that the trial court abused its discretion in granting the temporary injunction, the order remains in effect and the film—which is presumably protected under the first amendment—remains suppressed pending a full-blown trial on the merits.[23] At such a trial, it is quite possible for the court to hold that the film is not obscene, *cf. Texas Foundries, Inc. v. Foundry Workers, supra* 261 S.W.2d at 464; *Lloyd A. Fry Roofing Co. v. State,* 541 S.W.2d 639, 648 (Tex.Civ. App.—Dallas 1976, writ ref. n. r. e.), with the end result being that a film protected by the first amendment has been indefinitely suppressed before an on-the-merits judicial determination of obscenity. The Court recognized such a danger in *Freedman*: "the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous" preliminary restraint. 380 U.S. at 59, 85 S.Ct. at 739. Moreover, in *Southeastern Promotions* the Court, as in *Freedman* analyzing an administrative system, stressed that a final on-the-merits judicial determination was not immediately available. Justice Blackmun wrote:

> The board's system did not provide a procedure for prompt judicial review. Although the District Court commendably held a hearing on petitioner's motion for a preliminary injunction within a few days of the board's decision, it did not review the merits of the decision at that time. The question at the hearing was whether petitioner should receive *preliminary* relief, i. e., whether there was a likelihood of success on the merits and whether petitioner would suffer irreparable injury pending full review. Effective review on the merits was not obtained until more than five months later. * * During the time prior to judicial determination, the restraint altered the status quo.

420 U.S. at 561–62, 95 S.Ct. at 1248 [emphasis in original].

The identical situation is present under the Texas injunction procedure; the hearing on the temporary injunction does not constitute an on-the-merits determination of obscenity, and there is no provision for a prompt review on the merits. And, while such a temporary injunction is in effect, the status quo is obviously altered—rather than maintained—and presumably protected speech is indefinitely suppressed. It is difficult to improve upon the words of Judge Aldisert in *Grove Press, Inc. v. Philadelphia, supra*:

> The mischief we perceive . . . is that there is no guarantee a final hearing will be seasonably scheduled after the issuance of a preliminary injunction and that a prompt decision will be forthcoming thereafter. The preliminary restraint could exist days, and even months, before the judicial decision on the merits; where this possibility exists, an unacceptable threat to the freedom of expression without due process of law results.

\* \* \* \* \* \*

disposing of the allegedly obscene film pending trial but not interfering with its continued exhibition. *Compare* N.C.Gen.Stat. § 14–190.-2(d)(3); Tenn.Code Ann. § 39–3019. *See Paris Adult Theatre I v. Slaton, supra; Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

**23.** It is no answer to maintain that the theater operator could obtain a prompt, final judicial determination of obscenity by violating the injunction and thus bringing about contempt proceedings. *See* Tex.Rev.Civ.Stat.Ann. art. 1911a; Rule 692, Tex.R.Civ.P. Such a violation would constitute constructive criminal contempt, *Ex parte Werblud,* 536 S.W.2d 542 (Tex.

1976), and the state would have the burden of proof beyond a reasonable doubt. Surely one is not required to risk criminal sanction in order to obtain what *Freedman* requires the state to provide. Under the contempt procedure, the burden of obtaining a prompt, final judicial determination of obscenity is impermissibly placed on the theater operator. Moreover, although the state has the burden of proving beyond a reasonable doubt that the theater operator is guilty of contempt, it is not clear whether the state also has the burden of proving that the film is obscene, as *Freedman* requires. *Cf. Railroad Comm'n v. Sample,* 405 S.W.2d 338, 343 (Tex.1966).

Where expression is inhibited as a result of prompt judicial decision reached after an adversary proceeding, there can be no procedural due process complaint. But where the inhibition occurs in a preliminary proceeding, with no guarantee of a prompt judicial decision on the merits, the procedure is constitutionally defective because a restraint of presumably protected expression not only occurs but is capable of persisting for an unlimited time prior to the required judicial determination.

418 F.2d at 90.

Accordingly, we hold that Article 4667(a)(3), which authorizes injunctions in the obscenity context, is constitutionally infirm for its failure to provide the safeguards mandated by *Freedman*. In short, the Texas procedure does not treat obscenity with the kid gloves that the first amendment requires, for the state's process for ascertaining whether certain materials are obscene must ensure "the necessary sensitivity to freedom of expression." *Freedman v. Maryland, supra* 380 U.S. at 58, 85 S.Ct. at 739. *Compare* the New York procedure outlined in *Kingsley Books, Inc. v. Brown, supra,* which the *Freedman* Court described as a "model." [24]

▮ Although this court can construe two state statutes to be exclusive of one another in order to avoid a constitution-

al difficulty, as we have done in Part I of this opinion, we cannot judicially rewrite the Texas statutes and rules to incorporate the *Freedman* safeguards. As the Supreme Court said in *Freedman* "[h]ow or whether Maryland is to incorporate the required procedural safeguards in the statutory scheme is for the state to decide." 380 U.S. at 60, 85 S.Ct. at 740. *Compare United States v. Thirty-Seven Photographs, supra* (federal statute). The task of complying with *Freedman* must therefore be left to the State of Texas.

## IV.

▮ King Arts seeks a remand to the district court for a determination and award of costs and attorneys' fees. Under 42 U.S.C. § 1988, as amended in 1976, a "prevailing party" in an action brought under the Civil Rights Acts, 42 U.S.C. §§ 1981–86, may be awarded "a reasonable attorney's fee as part of the costs." The statute's constitutionality has been upheld. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Rainey v. Jackson State College,* 551 F.2d 672 (5 Cir. 1977). These decisions also make clear that § 1988 permits attorneys' fees in cases that were pending at the time of its enactment. The instant case falls into that category.[25]

▮ Although this court has discretion to award costs and fees arising out of

---

24. Texas once had a procedure by which obscenity injunctions were treated in a special fashion. Texas Penal Code of 1925, art. 527, § 13, *repealed,* Acts of 1973, 63d Legislature, ch. 399, § 3. This same legislation amended present Art. 4667 to include obscenity. Ch. 399, § 2(J). For judicial consideration of the former procedure, see *State v. Scott,* 460 S.W.2d 103 (Tex.1970), *cert. denied,* 402 U.S. 1012, 91 S.Ct. 2188, 29 L.Ed.2d 435 (1971); *Newman v. Conover,* 313 F.Supp. 623 (N.D. Tex.1970) (three-judge court); *Fontaine v. Dial,* 303 F.Supp. 436 (W.D.Tex.1969) (three-judge court).

The Pennsylvania injunction rules include the following provision:

When a preliminary or special injunction involving freedom of expression is issued, either without notice or after notice and hearing, the court shall hold a final hearing within three (3) days after demand by the defendant. A final decree shall be filed . . . within

twenty-four (24) hours after the close of the hearing. If the final hearing is not held within the three (3) day period, or if the final decree is not filed within twenty-four (24) hours after the close of the hearing, the injunction shall be deemed dissolved.

Rule 1531(f)(1), Pa.R.Civ.P. An explanatory note states that the three-day period is a maximum and that "in particular cases, a shorter period may be required." For relevant judicial background, see *Grove Press, Inc. v. Philadelphia, supra; Duggan v. 807 Liberty Ave., Inc.,* 447 Pa. 281, 288 A.2d 750 (Pa.1972); *Commonwealth v. Guild Theatre, Inc.,* 432 Pa. 378, 248 A.2d 45 (Pa.1968).

25. As the panel opinion makes clear, attorneys' fees are permissible in a civil rights suit alleging violations of first amendment rights. 559 F.2d at 1300–01. *See also Simpson v. Weeks,* 570 F.2d 240 (8 Cir. 1978); *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114 (1 Cir. 1977).

an appeal to this court, *Globe Life & Accident Ins. Co. v. Still,* 402 F.2d 295 (5 Cir. 1968), we think that the district court should determine the total award here, *see Panior v. Iberville Parish School Board,* 543 F.2d 1117, 1120 (5 Cir. 1976), especially since the district court reached its decision on the merits prior to the effective date of the 1976 amendment to § 1988. Accordingly, we remand the case to the managing judge of the district court with directions to set reasonable attorneys' fees in accordance with the standards established in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5 Cir. 1974). The district court shall determine the necessity of holding an evidentiary hearing.

## V.

The judgment of the district court holding unconstitutional Tex.Rev.Civ.Stat.Ann. art. 4667(a)(3) is AFFIRMED, and the case is REMANDED to the district court for the awarding of reasonable attorneys' fees to King Arts, the prevailing party.

SO ORDERED.

GEE, Circuit Judge, with whom BROWN, Chief Judge, COLEMAN, AINSWORTH, TJOFLAT and VANCE, Circuit Judges, join, dissenting:

## I.

### *Of Draconian Remedies and Strained Constructions to Avoid Them*

Part I of the majority opinion reaches the same result on about the same reasoning as the panel opinion, *see* 559 F.2d at 1290–92. I concur in it.

## II.

### *Of Injunctions, Statutes and Prior Restraints*

Part II of the majority opinion declares Texas Article 4667(a)(3) unconstitutional as authorizing injunctions against the future exhibition of unnamed obscene films. The Texas statutes defining obscenity are couched in the language of the Supreme Court's decision in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and there is no contention that their standards or definitions are overbroad. Further, the Texas courts (as a matter of general procedural law) require in the obscenity context as elsewhere that injunctions be specific, clear and definite. In the example chosen by the majority, *Richards v. State,* 497 S.W.2d 770 (Tex.Civ.App.—Beaumont 1973, no writ hist.), the injunction prohibited "exhibiting or selling any other films which show actual acts of fellatio . . ., cunnilingus . . ., actual oral genital contact between two or more males or females, any sexual intercourse, between any human and any animal or any scenes depicting actual sexual intercourse, between human males and females." 497 S.W.2d at 772. Modifying the decree to incorporate the holding of *Miller v. California, supra,*[1] the Texas court upheld the injunction.

Thus the holding of the majority appears to be that any injunction, no matter how specific, that restrains the exhibition of films by definitions or categories rather than one-by-one and after the fact of a specific, prior adjudication of obscenity is invalid. To quote from the opinion (Maj. op. p. 169):

> "An injunction that forbids the showing of any film portraying the particular acts enumerated in the obscenity statute suppresses future films because past films have been deemed offensive. As Chief Justice Hughes wrote in *Near v. Minnesota, supra,* 283 U.S. 697, at 713, 51 S.Ct. 625, '[t]his is of the essence of censorship.'"

I think that there are serious flaws in this reasoning.

In the first place, the majority's statement is simply incorrect: an injunction against exhibiting a film depicting enumerated acts from the obscenity statute suppresses that film not at all "because past films have been deemed offensive" but be-

---

1. "The injunction granted by this paragraph of the order is limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have any serious literary, artistic, political, or scientific value." 497 S.W.2d at 782.

cause the present film depicts the acts in a manner forbidden by the statute.

In the second, the quotation from *Near v. Minnesota* is a characterization of an entirely different sort of act—the suppression of publication of future issues of a newspaper because earlier issues were deemed scandalous. The analog of such an act in the present context would be the closing of King Art's Theatre to exhibition of *any* film because it had exhibited obscene ones in the past. This would indeed be "of the essence of censorship," but it is a far cry from an injunction forbidding in specific terms the exhibition of such films only as violate the statute.

Indeed, the majority's reasoning on this head comes to little more than announcing that injunctions are prior restraints and prior restraints are bad. The suggestion that an injunction merely against obscene matter—admittedly unprotected by the first amendment—might be valid is disposed of, as nearly as I can understand the opinion, by the observation that obscenity cannot be defined with sufficient precision to be the subject matter of a valid injunction. Unless this is what the sentence at Maj. op. p. 169 commencing "Incorporation of the statutory definition of obscenity . . . merely begs the question" means, then I do not know what it means. But this argument proves too much, for if the definition is too vague for an injunction, surely it must also be too vague to satisfy due process as giving fair notice of conduct subject to criminal penalties?

More, the argument is overbroad in another respect. It implies that no injunction in a first amendment context is valid, though we know this is not so. Indeed, as a practical matter, I can see little if any difference between an injunction against exhibiting obscene films (constitutionally defined) and a statute against doing so, and what difference there is favors the injunction. As Mr. Justice Frankfurter wrote for the Court in *Kingsley Books v. Brown*, 354 U.S. 436, 441–2, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957):

"The phrase 'prior restraint' is not a self-wielding sword. Nor can it serve as a talismanic test. The duty of closer analysis and critical judgment in applying the thought behind the phrase has thus been authoritatively put by one who brings weighty learning to his support of constitutionally protected liberties: 'What is needed,' writes Professor Paul A. Freund, 'is a pragmatic assessment of its operation in the particular circumstances. The generalization that prior restraint is particularly obnoxious in civil liberties cases must yield to more particularistic analysis.' The Supreme Court and Civil Liberties, 4 Vand.L.Rev. 533, 539.

"Wherein does § 22-a differ in its effective operation from the type of statute upheld in Alberts? Section 311 of California's Penal Code provides that 'Every person who wilfully and lewdly . . . keeps for sale . . . any obscene . . . book . . . is guilty of a misdemeanor . . . .' Section 1141 of New York's Penal Law is similar. One would be bold to assert that the *in terrorem* effect of such statutes less restrains booksellers in the period before the law strikes than does § 22–a. Instead of requiring the bookseller to dread that the offer for sale of a book, may without prior warning, subject him to a criminal prosecution with the hazard of imprisonment, the civil procedure assures him that such consequences cannot follow unless he ignores a court order specifically directed to him for a prompt and carefully circumscribed determination of the issue of obscenity. Until then, he may keep the book for sale and sell it on his own judgment rather than steer 'nervously among the treacherous shoals.'"

Thus if a statute forbidding publication of obscenity can be constitutionally valid, it is hard for me to see how an injunction doing the same thing is per se invalid. Yet as nearly as I can understand the majority opinion, this is what Part II of it says.

## III.

### *Of Kid Gloves and Obscenity*

Part III of the court's opinion purports to invalidate Texas Article 4667(a)(3) on the

additional ground that it "lacks the procedural safeguards required by *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)" (Maj. op. p. 169) and hence fails to "treat obscenity with the kid gloves that the first amendment requires, . . . ." (Maj. op. p. 172). But since Article 4667(a)(3) does no more than in general terms authorize an injunction, thus implicitly referring to the basic Texas injunction procedures, it is in fact these latter which the opinion finds procedurally deficient when sought to be employed against obscenity. These procedures are patterned on the Federal ones, Texas Rules of Civil Procedure 680 and 681 which define them being copied from Federal Rule 65, with minor and insignificant textual changes. It is plain, therefore, that a necessary consequence of the majority opinion is to invalidate our Rule 65 procedures to the same extent as the Texas ones, an effect which practitioners in our courts should note. Thus we impliedly hold today that those who crafted and promulgated our own Federal system of injunctions overlooked providing a procedure valid for use in the obscenity context, a somewhat far-reaching and arresting conclusion.

The majority reaches this result by fixing on one word of the Supreme Court's language in two cases arising in a somewhat different context from this, court review of *administrative* censorship. With deference, it seems to me that the contexts are sufficiently dissimilar that the language in question need not and should not be applied here, where no administrator and no censor—only courts—figure in the matter anywhere. The two cases are *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); the word seized upon is the term "final."

In a nutshell, the majority holds that Texas (and hence Federal) injunction proce-

dures are invalid as applied to obscenity because they do not require a "final" ruling on the merits of obscenity before preliminary injunctions may issue against the pornographer, only the ascertainment of that "probable right" thought a sufficient basis for the interlocutory writ in all other contexts. This holding is said to be required by an expression of the Supreme Court in *Freedman,* refined and restated in *Southeastern,* running as follows:

> We held in *Freedman,* and we reaffirm here, that a system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards: First, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. Second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. Third, a prompt *final* judicial determination must be assured. 420 U.S., at 560, 95 S.Ct. at 1247 (emphasis added).

The context of *Freedman* and *Southeastern,* however, was very different from this. Here all action, from start to finish, was judicial; no administrator or censor figured in the matter at any stage;[2] and the only conceivable "prior restraint" would have been a preliminary injunction pendente lite. In *Freedman,* by contrast, there was involved a procedure for the absolute administrative suppression of a film by refusal of a censor's license; and in *Southeastern,* the use of a theatre was administratively refused, thus preventing entirely the production of a musical there. These were "final" administrative acts; final, that is, unless and until those complaining of them took their cases to court and bore the burden of overturning them. In such situations, the quoted formulation by the Supreme Court makes sense and has full application: limiting the censor to a brief, administrative restraint, followed by judicial review at the instance of the censor, with the burden of proof upon him, and a required prompt,

---

2. Indeed, the only action ever contemplated was a *suit* by the county attorney to obtain an injunction against the showing of obscene motion pictures. King Arts forestalled even this by bringing its own suit in federal court to restrain the county attorney from such an action.

final judicial determination ending the administrative ministry one way or the other.

Nor has the Court left us in doubt about why it requires prompt and final judicial action in such a context: it is because "[d]uring the time prior to judicial determination, the [administrative] restraint altered the status quo"[3] and after administrative intervention "a judicial determination must occur 'promptly so that administrative delay does not in itself become a form of censorship.'"[4] In other words, only a brief *non*-judicial interdiction of matter arguably protected by the first amendment will be tolerated; and if material has been taken off the market by a final administrative action pending a judicial decision, that decision must come quickly. Here, however, neither reason for such a rule obtains. There neither was nor could have been any administrative restraint to alter the status quo. Nor could such a restraint (since there neither was nor could have been one) have required hurried judicial action finally upholding or reversing it, lest administrative delay become itself an instrument of suppression.

That these holdings have application to proceedings such as this, which contemplate neither censor nor other administrator but only the normal judicial process, is far from clear to me. To apply, their rule must be rewritten to run as follows: where a preliminary judicial decision resulting from an adversary hearing has been made that matter is probably obscene and should be taken off the market pendente lite, a procedural scheme—to be valid as applied to pornography—must further require that the judge conduct a prompt hearing on the merits of obscenity and render a prompt final judgment on it as well.

I do not deny that there are arguments that can be made in support of such a rule. It seems to me, however, that they are of quite a different sort than those which underlie the rule of *Freedman* and *Southeastern:* that censors (all too often, history

teaches, afflicted by tunnel vision) should not be permitted to remove first-amendment type matter from the marketplace indefinitely or cast the burdens of going forward or of proof on its purveyors; and that where such matter is censored, prompt and effective review by a judge must be provided so that the matter is, if protected, returned to the marketplace without any lengthy languishing under administrative ban. I hope that I am not insensitive to first amendment considerations and issues; but it seems to me that where mere successive stages of judicial consideration—usually before the same judge—are concerned rather than review by the judge of a censor's fiat, the general procedures which suffice for all other purposes should be sufficient for dealing with pornography.

*Conclusion*

For the above reasons, I respectfully dissent from Parts II and III of the opinion herein.

---

**3.** *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 562 95 S.Ct. 1239, 1248, 43 L.Ed.2d 448 (1975).

**4.** *Heller v. New York*, 413 U.S. 483, 489, 93 S.Ct. 2789, 2793, 37 L.Ed.2d 745 (1973), quoting from *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 367, 91 S.Ct. 1400, 28 L.Ed.2d 44 (1971).